31981. WARNOCK *v.* SOPERTON MOTOR COMPANY.

DECIDED APRIL 29, 1948.

*J. Carlton Warnock, Underwood & Underwood,* for plaintiff.
*Jackson & Graham,* for defendant.

FELTON, J. Warnock testified as follows: "The Soperton Motor Company is indebted to me in the principal sum of two hundred and sixty dollars, with interest on that sum from the 5th day of January, 1943, to this date for the rent of the garage building and buildings that said Soperton Motor Company rented from me acting by and through its manager, Alva Calhoun. The way it came about was that the Motor Company had been renting the place from Mr. C. D. Williams for several years and I bought the place from Mr. Williams on the 19th of March of 1942, and the day I bought the place, I went over and told Mr. Calhoun I had bought the place and discussed the rent and agreed that the rent that he had been paying was forty dollars per month and that it would run at the same rate and he agreed to pay me that amount per month after that time and he was to deposit the forty dollars each month for the rent to my credit in the Bank of Soperton and he paid me two payments and quit paying. I got after him about paying the rent and he told me that he wanted me to reduce the rent, that he could not pay that much, and I told him that I could not and would not rent the place to them any cheaper and he told me that he would move out if I did not reduce the rent, or words to that effect. I went to see him one day in

the fall of 1942, and asked him for the rent and he told me that he was not going to pay me and I told him that he was keeping the place locked up and keeping some of his things in the place and that I could not use the house with it locked up. I had the chance to rent the place several times, but I could not rent it when their things were in the place and he had the building locked up and had the key and would not give it to me. I never got the key until January 15, 1943, and the way I got the key then was that Mr. Estroff came to me to rent the place and I told him if he would get the key from Mr. Alva Calhoun, the manager of the Soperton Motor Company, I would rent the place to him, and Mr. Estroff got the key on the 15th day of January, 1943, and he and I went in the place and looked it over. Mr. Estroff did not rent the place. Mr. Calhoun told me he would not keep the place unless I reduced the rent and I told him I could not help it, I could not reduce the rent. Mr. Calhoun did not ask me to make any repairs on the building; I never heard any kick on the building or anything about repairs needing on it until here today."

Alva Calhoun, executive officer and general manager of Soperton Motor Company, testified for the defendant as follows: "Soperton Motor Company was occupying the building in question in Soperton, Georgia, during the first part of 1942, as a tenant at will of C. D. Williams, at a monthly rental of $40 per month, and by arrangement between Soperton Motor Company, C. D. Williams, and the Bank of Soperton, Soperton Motor Company paid the rent to the Bank of Soperton for the account of C. D. Williams. On or about June 1, 1942, Mr. Warnock, the plaintiff in the case, came to the building which was then the place of business of Soperton Motor Company, and told me that he had bought the building from Williams, and that he would like to make arrangements and agreement for Soperton Motor Company to continue to rent the building from him. He said that he thought he should have more rent. At the time of the conversation, Soperton Motor Company had paid June rent to the bank, and I understood that the payment was for the account of C. D. Williams. When Mr. Warnock came to see me the first of June, 1942, I told him that Soperton Motor Company would not agree to pay more rent for the building and that it did not want to rent the building at all unless the rent was reduced to $20 per month.

Mr. Warnock and I could not reach any agreement about future rent. He wanted more rent and Soperton Motor Company offered less. I then told him that Soperton Motor Company would vacate the building by the last of June; that we had already paid rent for June and that as soon as that month was out we would get out of the building. It was agreeable with Mr. Warnock for Soperton Motor Company to move. Mr. Warnock did not make any objections when I told him that Soperton Motor Company would move out and not rent the building after June, 1942. He did not make any statement or claim that we would owe him rent after June, 1942, or that we were bound for any rent after June, 1942, or make any claim that Soperton Motor Company rent contract extended beyond June, 1942. Soperton Motor Company moved out of the building the last of June, 1942, and had everything out of the building by July 1, except a settee and some junk. I do not remember exactly what day the settee was moved. It stayed in the building a few days after July 1, 1942. We told Mr. Warnock's brother that he could use the settee and he moved it out. There was some junk consisting of an automobile body and some old automobile parts left in the building. Soperton Motor Company did not claim the old automobile body nor the junk that was left in the building and had the building been swept out when we moved all of this would have been swept out into the trash pile. When Soperton Motor Company moved out of the building, we left a lock on the building and kept the key. We did this for Mr. Warnock's benefit. He had no lock on the building and the lock that was left there was ours. We left it on there for the protection of the building as we thought Mr. Warnock would complain if we left the building open and exposed. We thought he would appreciate the fact that we locked up the building for him and held the key for his benefit. He could have gotten the key any time he wanted it. Mr. Warnock did not at any time ask us for the key. We gave it to Mr. Estroff sometime after we had moved out and at the time Mr. Estroff was negotiating with Mr. Warnock for renting the building. Mr. Warnock saw us move out of the building. He did not make any demand on Soperton Motor Company for rent until late spring or early summer, 1943. At that time we had had a little difficulty about some other matter and also I understood

that someone in the legislature had told him that he could collect rent out of us since we had the key. Soperton is a small town, and Mr. Warnock saw the building in question almost daily or several times each week and knew that we had vacated the building the last of June, 1942, and did not occupy or use it after that time. At the time I had the conversation with Mr. Warnock about the rent the building was in bad condition. The roof leaked and the floor had rotted out in several places. The building was not suitable for our business without repair. The Soperton Motor Company was conducting an automobile sales and repair business. I pointed out the condition of the building to Mr. Warnock when he and I had the conversation about Soperton Motor Company renting the building. I told him we could not use the building unless it was repaired. Mr. Warnock and I only had one conversation about renting the building, that conversation was about June 1, 1942. Soperton Motor Company did not pay any rent to Mr. Warnock. It paid all rent to the Bank of Soperton and all rent paid by it to the Bank of Soperton was with the understanding on the part of Soperton Motor Company that it was paid for the account of C. D. Williams. Soperton Motor Company did not at anytime refuse to give Mr. Warnock the key. He did not ask us for it."

Bill Estroff testified for the defendant as follows: "I spoke to Mr. Warnock about renting the garage in question, and I went and got the key from Mr. Alva Calhoun and took it to Mr. Warnock, the plaintiff in this case, and we went into the building and looked it over. I did not rent it because it did not suit for the purpose I wanted it. I wanted to rent the building to run an electric appliance equipment business in. I did not notice the condition of the building. Do not think I paid any attention to the top or roof. The floor was pretty rough, as I recall."

■ The court did not err in overruling the motion for a new trial, consisting of the general grounds only. Under the evidence, the jury was authorized to find that the defendant agreed to vacate the premises on June 30, 1942; that the plaintiff agreed that it might do so; that the premises were vacated by the defendant on June 30, 1942; and that the plaintiff accepted such vacating as was done as a compliance with the agreement to vacate. It is contended by the plaintiff that the jury was not authorized

to find that there was a surrender of the premises and an acceptance of the surrender by the plaintiff. We think that the jury was authorized so to find from the facts and legitimate inferences therefrom. Since the mere taking of keys by a landlord from a tenant who is vacating will not alone suffice to show an implied surrender and acceptance conclusively (*Clark* v. *Sapp,* 47 *Ga. App.* 91, 169 S. E. 692), conversely, the mere fact that a vacating tenant retains possession of a key to the premises, especially when the tenant owns the lock and the key, does not of itself conclusively show that there was no surrender and acceptance. The fact that the plaintiff knew that the defendant had vacated the premises, except for a few insignificant pieces of property, and did not mention or demand rent therefor for more than six months, together with the agreement with reference to vacating, which the jury found was made, and the surrender of the key on request, authorize the finding and the verdict for the defendant. Since this is true, it is not necessary to explore the question whether the verdict was authorized for another reason.

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, C. J., and Parker, J., concur.*